THE MERRIMACK RIVER SAVINGS BANK v. CORNELIA H. CURRY et al., as Executors of the last Will of W. S. Curry, deceased.

### No. 123.

SURETY— Construction of Obligation.  A surety is a favorite of the law, and has a right to stand upon the precise terms of his obligation; and when the terms used therein are not explicit, the courts will place such a construction thereon as will uphold the evident understanding of the parties as to its force and effect at the time it was entered into.

MEMORANDUM.— Error from Shawnee circuit court; J. B. JOHNSON, judge.  Action by The Merrimack River Savings Bank against W. S. Curry and others on a bond.  Judgment for defendant Curry.  Plaintiff brings the case to this court.  Affirmed.  The opinion herein, filed September 9, 1896, states the material facts.

*J. D. McFarland*, and *Wheeler & Switzer*, for plaintiff in error.

*Douthitt & Wolfe*, for defendants in error.

The opinion of the court was delivered by

GILKESON, P. J.: In April, 1885, the plaintiff commenced a suit in the district court of Shawnee county, which was afterward removed to the circuit court of the United States for the district of Kansas, against Rufus Bean, Susan A. Bean (husband and wife), and Christopher E. Schmidt, to recover of the Beans the amount due on a promissory note secured by mortgage, and to foreclose said mortgage. Christopher Schmidt also held a mortgage on the same property, and was for that reason a party defendant. At the time of the commencement of this suit an application was made for a receiver. The defendants Bean and his wife tendered a bond in the sum of $1,200, upon which W. S. Curry was surety. The court accepted this bond, and overruled the application for a receiver. The bond is as follows:

" Know all men by these presents, that we, Rufus Bean and Susan A. Bean, as principals, and W. S. Curry and ——, as sureties, all of Shawnee county, in the state of Kansas, are held and firmly bound unto the Merrimack River Savings Bank, a corporation duly organized and existing under and by virtue of the laws of the state of New Hampshire, in the penal sum of $1,200, lawful money of the United States, to the payment of which, well and truly to be made, we do hereby jointly and severally bind ourselves, our heirs, executors, administrators, and assigns, firmly by these presents. The conditions of this obligation are such that, whereas the said Rufus Bean and Susan A. Bean, on the 15th day of December, 1881, executed and delivered to said Merrimack River Savings Bank their

certain promissory note for the sum of $6,000, due 5 years after date, with interest thereon at the rate of 8 per cent. per annum, payable semiannually according to the coupons attached to said note, and to secure the same executed and delivered unto the Merrimack River Savings Bank a certain real-estate mortgage, which said mortgage was, however, junior and subsequent to certain other mortgages held by Christopher E. Schmidt, to secure the sum of $3,500 and interest; and whereas, said Merrimack River Savings Bank, as plaintiff, has commenced a suit in the district court within and for the county of Shawnee, in the state of Kansas, against said Rufus Bean and Susan A. Bean and Christopher E. Schmidt, as defendants, praying a personal judgment against said Rufus Bean and Susan A. Bean for the amount due on said note and mortgage, and also for a foreclosure of said mortgage, and the sale of said mortgaged premises to pay said indebtedness; and whereas, said plaintiff has made an application to said court in said action for the appointment of a receiver therein to take charge of said mortgaged premises and collect the rents and profits thereof, which said order said court refused to make, but ordered this bond, conditioned as herein set forth, to be executed in lieu thereof: The condition of this obligation is such that, if the above-bounden Rufus Bean and Susan A. Bean shall, within 10 days after the sale of said mortgaged premises under a decree of foreclosure rendered in said action, pay to the Merrimack River Savings Bank the balance, if any, to the amount of this bond, due upon the judgment rendered in favor of said Merrimack River Savings Bank in said action, after applying the proceeds arising from the sale of said mortgaged premises to the payment of the mortgaged indebtedness thereon, under the order of said court, in accordance with the priorities established by said court, then this obligation shall be void; otherwise shall remain in full force and effect. Dated this 6th day of May, 1885.   RUFUS BEAN.
SUSAN A. BEAN.
W. S. CURRY.''

On the 3d day of May, 1886, the circuit court of the United States ordered and decreed that there was due the said Merrimack River Savings Bank, plaintiff herein, from Rufus Bean and Susan A. Bean, the sum of $7,275.84, and that said indebtedness should bear interest at the rate of 12 per cent. per annum; that there was due defendant Christopher E. Schmidt, from said defendants Rufus Bean and Susan A. Bean, the sum of $4,404.67, and that debt should bear interest at the rate of 10 per cent. per annum; and that said Christopher E. Schmidt had a first lien, and that said Merrimack River Savings Bank had a second lien upon the premises therein described, by virtue of the mortgages sued on. And it was then and there by the court further ordered and decreed, that should defendants Rufus Bean and Susan A. Bean fail for six months from the rendition of said judgment to pay to said Merrimack River Savings Bank and said Christopher E. Schmidt said sums so as aforesaid foundd ue them, together with the interest thereon and the costs of action, the said described premises should be sold, without appraisement, etc. Said premises were, on the 20th day of December, 1886, by W. A. Scott, special master in chancery, sold in accordance with said decree, and he filed his report showing that the premises sold for the aggregate sum of $12,175; that the costs of suit amounted to $261.27; that the amount due Christopher E. Schmidt was $4,682.40, and that the amount due the Merrimack River Savings Bank was $7,826.37.

After this report was filed, in January, 1887, the plaintiff applied to the court, asking that the taxes levied and assessed against the real estate, amounting to $282.68, be paid. The court ordered the master in chancery to pay these taxes out of the proceeds of said sale. On the 16th day of February, 1887, W. S.

Curry, the surety on said bond, paid to the clerk of said circuit court the sum of $606.14. The plaintiff contends that under the terms of this bond the taxes so as aforesaid paid should be deducted from the amount received for the property, as well as the cost of said suit, and that then the balance due would be $877.72, with interest at the rate of 12 per cent. per annum, and, to recover this amount, on the 13th day of April, 1890, brought suit upon this bond. W. S. Curry filed a demurrer to the petition. Rufus Bean and Susan A. Bean made default. Upon the hearing had upon the demurrer, the court held that the petition did not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant Curry, and sustained the demurrer. The cause was proceeded with as against the other defendants, and judgment rendered against Bean and Bean for the sum of $441.61. Plaintiff brings the case here for review on the action of the court sustaining the demurrer.

Why was this bond given? There was an action pending to foreclose two mortgages against the property of the principals on this bond — one belonging to the plaintiff in error, and the other to one Christopher E. Schmidt. These were the only things under consideration at the time, and to provide for the payment thereof this bond was entered into. One of these must be a first, and the other a second lien on the land. The court must and would decide between them. This would constitute the "priorities" to be established. If the plaintiff's was decreed to be a prior lien, then the liability of the bond would only be the difference between the purchase price (or proceeds) and the amount due on the judgment rendered. If the purchase price was more than the judgment,

then there would be no liability. If it was declared to be a second lien, then the liability would be determined in another manner, viz. : If the purchase price was not sufficient to pay the first, the liability would be for the amount of the judgment rendered. If more than sufficient to pay the first, then it would be the difference between the purchase price, less the amount of the other mortgage, and the amount of the judgment rendered, subject to the order of the court made at the time the decree of foreclosure was entered. The order entered at that time was "to pay to said Merrimack River Savings Bank the sum as aforesaid found due, together with the interest thereon and costs of this action." ·The court found with reference to the amounts due, that there was due the plaintiff $7,275.84, with interest at 12 per cent. ; that there was due to Christopher E. Schmidt the sum of $4,404.67, with interest at 10 per cent. The amount therefore found due on the mortgage indebtedness was the difference between these two sums, and the interest thereon ; and, under the order of the court, the bondsmen had six months from the date of the rendition of the judgment in.which to pay this amount.

We cannot believe that it was. contemplated by the. parties at the time the bond was given that the term "proceeds" meant the amount due after all expenses were deducted, or that they intended to be bound for the payment of any and all liens that might be established against this property. They used the term "proceeds" in its usual well-known general signification, "The sum, amount; money arising from the sale ; the purchase price ; the. bid." We think the language of the bond admits of but one construction, viz. : That the proceeds (that is, the purchase price ; the amount bid) shall be applied to the "mortgage

indebtedness" according to the "priorities," and then, if any balance was due, it should be paid under the bond, according to the order of the court. We fail to see where there is any room, under the conditions of this bond, to hold the surety for a deficiency created by any other liens than those contemplated at the time he became a surety. Suppose it developed in the progress of this action that a mechanic's lien had attached to either of the tracts of land, and it was prior to either or both of these mortgages, so that the plaintiff's mortgage, instead of being a second, would have been a third lien : would it for a moment be contended that this bond would indemnify against it? We think not; and the taxes were simply a lien. These parties, as we have said, were contracting for and about two certain mortgages — nothing more and nothing less. The taxes were surely not contemplated. The record shows that the plaintiff did not think of them until long after the sale was made. The plaintiff had it in its power to make these taxes a part of the mortgage indebtedness. It failed to do so. We cannot make a contract for it. The court, under the statutes, ordered these paid, not as a part of the "mortgage indebtedness," but out of the "proceeds." We cannot understand how it can be claimed that the parties to be bound intended that the taxes should be first paid, any more than any other lien that had attached to this property.

This bond was given in a legal proceeding. The parties could very easily have made it express what they now claim it means. They did not, but have acted under it. The record shows that the surety paid (under the order of the court, adding interest and deducting costs) the sum of $606.14, and there is no showing made that any objection was ever entered

by the plaintiff until more than three years afterward, by bringing this action. We do not think equity demands or would uphold any such strained construction being placed upon the plain terms of this bond.

The contention of the plaintiff in error calls to mind the noted litigant in the court of last resort at Venice, reported unofficially some centuries ago. He, being in about the same frame of mind and occupying the position they do here, stated his claim :

> "Till thou canst rail the seal from off my bond,
> Thou but offend'st thy lungs to speak so loud.
> . . . I stand here for law."
> *Shylock v. Antonio*, Merchant of Venice, act IV, scene I.

We can best meet this position by using the plea the plaintiff in that case urged, as he saw his right of recovery melting away before the argument of Portia :

> "Is it so nominated in the bond?
> I cannot find it ; 't is not in the bond."
> *Shylock v. Antonio*, supra.

And the courts of the present day have sustained this doctrine : "That a surety is a favorite of the law, and has a right to stand upon the precise terms of his obligation." "That his liability cannot be extended by implication." (*Burton v. Decker*, 54 Kan. 608.)

The judgment of the court will therefore be affirmed.

CLARK, J., concurring.

GARVER, J., dissenting : I am unable to concur with the views expressed by the majority of the court in this case. In my opinion, a proper consideration of the circumstances under which the bond was made, and of the object of its execution, requires that such a construction be put upon it as will give effect to the evident intention the parties to provide for the pay-

ment of any deficiency that might remain on the plaintiff's judgment, in case it did not receive full payment and satisfaction thereof out of the proceeds of the sale of the mortgaged premises. The taxes due and unpaid on the land were a legal charge thereon, which the purchaser at the sale had a right to have paid out of the purchase-money (Gen. Stat. 1889, ¶ 6902); and the plaintiff could not look to the proceeds of the sale for payment of its judgment until all prior liens, including the taxes, were paid. I think the words, "after applying the proceeds arising from the sale of said mortgaged premises to the payment of the mortgage indebtedness thereon," should be held to refer, as concerns plaintiff's judgment, only to such proceeds as could be applied to the payment of such judgment, after the payment of all prior legal charges and liens which the court ordered paid.